Good morning. My name is Jonathan Kaufman. I represent the petitioners Sumaira Urooj and Khalid Turk. Mrs. Urooj and Mr. Turk have petitioned for review of an order terminating their asylum status and ordering them removed from the United States. And as I understand it, the chief complaint is that there was a local rule for the court in San Francisco that witnesses be identified, exhibits be identified, and there was not compliance with that local rule prior to the hearing. Am I correct? That's what Mrs. Urooj argued, that the Department of Homeland Security was required to give her notice 15 days before the hearing of the fact that it intended to call her as a hostile witness and to provide her evidence to support the allegations made in the asylum termination notice. But just before you go further, so now there is a new rule. So there is a uniform or national rule that does not require that disclosure, correct? No. Actually, the manual for the immigration court has the same rule, that there's a 15-day rule that a party in a removal proceeding is required to provide that information at least 15 days unless relieved by an immigration court. I thought that there's some exception for the party as a witness. There is an exception if the evidence is submitted. What's relevant here is if the evidence was submitted to impeach a witness. No, not the evidence. As to the witness. As to the alien. Yes. The Mrs. Urooj argued that if they intended to call her as a hostile witness, that the rule required that. Well, I know. But just, I mean, we may as well get this off the table. I'm not sure why it matters. But I thought the new national rule has a specific exception for the respondent as a witness. Is that wrong? Well, that would be for, I think what was lost by and the BIA didn't really honor here was the fact that there were two different proceedings that were occurring in front of the immigration judge. There was the initial proceeding was the notice of intent to terminate. Mrs. Urooj and Mr. Turp could not be removed from the United States unless their status was terminated. You're saying when she's called as a hostile witness in the first part of the proceeding, which was about terminating her asylum status, that was different? That's right. That's certainly unusual. Excuse me? It's somewhat unusual. It was unusual that they should do that because she didn't have any burden of proof at that proceeding. She wasn't applying for an immigration benefit. She had asylum. She could be called as a witness. And their problem was they presumably could have just gone ahead with her documents and proved their case that way had they not screwed up on the 15 days. I'm sorry, Your Honor. They presumably could have simply proven their case with the documents without her had they not screwed up on the 15 days. Maybe they could have. The only document of fraud, the only proof of fraud that they presented was a statement that was signed by Mrs. Urooj. It was sprung on her while she was on the witness stand. If they had filed that statement with the immigration court 15 days before the hearing, Mrs. Urooj could have submitted rebuttal evidence. No, I understand that. But in terms of whether they could have made out their case efficiently, if she didn't rebut it, they could have presumably just with the documents, with the documents timely. They could have without her testifying at all. If they had presented any evidence that was So then what happens next is that the, as to the documents, they are eventually admitted, but presumably under, apparently under this exception for rebuttal or cross-examination. It was admitted as impeachment evidence, even though Mrs. Urooj had not testified yet and hadn't presented Well, she had testified. I mean, she hadn't testified, but she had been on the stand and had all these adverse inferences made against her. Correct. And Mrs. Urooj says that it was an error for the immigration judge to draw an adverse inference from her silence. So was it impeaching? What is your position on that? So I think the immigration judge said it's impeachment evidence, and so therefore this is an exception to the rule. What's your position as to whether this was impeaching evidence, either calling her or the documents that were offered? Well, if the, if Mrs. Urooj had no duty to, to present any evidence at that hearing, if the burden was on the DHS to present the evidence, it was a mistake to infer from her silence some sort of admission to the, to the allegation in the notice of intent to terminate. So the, the document that was being submitted, the, the sworn statement, was it impeachment evidence? Because the only thing they were impeaching was the silence that she was entitled to, to maintain. She, she didn't have to answer any questions if she wasn't informed before the hearing. I'm not quite sure. Suppose they had noticed the hostile witness in advance. Would that have been, could they have called her a hostile witness to make out their case and compelled her to testify? No, I don't think so. I think, I think that, that's See, your objection to that is broader, broader than a procedural one. Yes. I think that, that her, her, her protection there was, was that they had the case to, to prove. I mean, if she was applying for asylum at that hearing and she was the applicant and she had the burden to prove, well, then she had to come forward. I understand that. But I'm asking if it was, would this hostile witness approach ever be okay? I, I think that it was, it was an error to, to treat her that way at, at, at the hearing. Is there any case law at all on that? Has anybody ever seen a case like that where somebody's, where the government's done that? There's, I, I found the, nothing on, on hostile witnesses. There's a case, a BAA case, a board case, matter of Gabara, that says that it, that it's an error to, to use the, the alien's silence as, as an admission. And that's, in effect, what, what happened here. Well, is the law different in the immigration area? Because in civil cases, the other party's witness, the other party is often called as a hostile witness, if we don't have the issue with the name being on the list. So notice has been given, but the other side, the defendant or plaintiff, whichever, is often called as a hostile witness. So is counsel's position in the immigration proceedings that's different? Well, I think that at the, at the immigration court, the, the only rule about the alien testifying would be a rule that, would be a statute that gives an immigration judge the authority to examine a witness in removal proceedings. And a statute that says that if an alien is making an application for an immigration benefit, that the alien must provide information. But again, those rules, I think, and those statutes weren't really germane here, because what was before the immigration judge was whether or not the Department of Homeland Security, when that hearing began, had presented evidence to sustain its burden of proof. And what happened was they presented no evidence whatsoever. When Mrs. Arouge appeared at that court, there was no evidence submitted. She had moved to terminate the proceedings because, in effect, Homeland Security had failed to prosecute its case. One last question, and I assume you want to reserve some time. Suppose we agreed with you in some, either as to the witness or as to the documents or both, what happens? I.e., do we remand for a proper hearing, or do we say she wins? I think that what should happen is the Court should send this case back to the Board with orders that it terminate the proceedings, that the, that the Homeland Security had the burden of proof at that hearing. You're saying it's insufficient evidence. Essentially, they had the, there was insufficient evidence, you win. Exactly. They failed to prosecute their case. And then when they got to the court, the immigration court that day, they tried to get out of it by putting her on the stand as a hostile witness, relying on adverse inferences by her silence, and springing evidence on her at the hearing. You never asked for a continuance. You didn't want one. Is that right? No, I did ask for a continuance. In fact, the immigration judge understood that what was being asked for was a continuance. Before Mrs. Arouge. I see. I thought it was the government who asked for a continuance. You were asked, you were offered a continuance at the end of the proceeding. Well, but at that point. By the documents, though. At that point, the immigration judge had, had already informed her 20, 25 times that he had drawn an adverse inference. He had told her that he construed her silence as mocking his authority. At that point, it was already done. The immigration judge. Right. But whatever defense that she would have had, for example, to the documents, if you had gotten the documents 15 days in advance, you told us that she might have, she might have come in and challenged them in some way. I mean, her signature is on the documents saying that she, that she lied to the, in her asylum application. So presumably, whatever defense you would have had to those documents, had the judge offered you a continuance, you could have accepted the continuance and come forward with that proof. You declined that. Because the, because it was unfair what had already happened. The, the evidence that had already been received and the decisions that had already been made by the immigration court all flowed from the errors that had already occurred. Also, the, the, those documents were admitted at that point only for impeachment. So if you've taken the continuance, presumably, they may have then been admitted on the merits, which is, is adverse. But at that, because at that point, all you had was the, the, the speaking or the nonspeaking and, and impeachment evidence. Well, but I think that, that the only way that, that Mrs. Arouge could have ensured that she had preserved her right to make the argument that the DHS had failed to, to, to prosecute its case, that it hadn't proven its case, was to, to challenge what had happened there. To continue the case would have, in effect, ratified their failure to, to present the evidence earlier. Thank you very much. Your time is up. We'll probably give you a minute in rebuttal. In terms of planning, by the way, we're going to take a short break after the next case, the following case to this one. Go ahead. Yes. Good morning, Your Honors. May it please the Court. John Blakely on behalf of the Respondent Attorney General of the United States. Your Honors, Ms. Arouge lied in her asylum application, and she admitted in a sworn statement that she, that she lied in that application. That's really kind of irrelevant. I mean, we have cases all the time in which Petitioners don't follow rules and, and it is held against them and they lose. So I don't know why the government should bet her off. I understand that she, she may get, you know, a pass on something that she shouldn't, but that happens a lot. And isn't this the issue here, the notice requirement? And don't you agree that there were local rules that required the disclosure? There are local operating procedures that guide the way that the court should proceed. There are also regulations that, that govern how immigration courts should be run. And under ACFR 1240.7a, an immigration judge is allowed to consider any material and relevant evidence that, that comes from testimony or previous written application. Let's look at where things ended up, okay? You have this matter of Guevara case which says that silence isn't enough. Silence isn't enough to prove the government's case. Does it say that? And you can't draw adverse inferences from the silence. You, you, from silence alone, yes, Your Honor. Okay. Then you have these documents which were, by the IJ, admitted only for impeachment. So where's your, where's your case? If you can't have the inferences and you only have impeachment evidence, didn't you just fail to make out your case? Leaving aside the, the, the question of whether you violated the rules or didn't violate the rules. Well, but, but the point is the, the evidence is in there that she has, that she lied and that she admitted that she lied. But it was only admitted by the IJ enforcing the rules as impeachment evidence, not on the merits. So where's your case? Well, the, the case is that the, the actual claim here before this Court is that there's a due process violation. And, and this Court requires two things. There's insufficient evidence. My understanding is their claim is you didn't make out your case. You didn't have sufficient evidence. But there, there, for that, for this Court to make that determination, what the Court has to say is there's no record evidence that would compel reversal of the immigration judge's conclusion. There is no record evidence. That's what I'm trying to say. Where is the record evidence? If you can't, if Guevara says you can't make the inference from silence, even though the district, the IJ purported to, and the IJ only admitted the documents for impeachment, where is the sufficient evidence? Your Honor, if you're going to reference Guevara and say that there was an improper inference made, then, then the appropriate remedy to that is to send it back to the  Why? If you didn't make a, you simply did not present evidence that is sufficient evidence, because you can't have the inferences. And it's not as if you would have done something else, either, because you had nothing else. You gave, you put in everything you had. Your Honor, the, the, I, I concede that, that the immigration judge did not handle this in the best possible way. Well, neither did the government. Your Honor, two days before the proceedings, the, the government called Mr. Coffman and, and, and because they had just been given the case. The other attorney on the case had been reassigned. They had just gotten it. They recognized the 15 days had not been, and they said, I, I need to get a continuance. And he said that he would oppose that continuance. There's one reason that he opposed that continuance. He saw the opportunity to walk into court and say, gotcha, to the government. Okay? Well, he just told me that he asked for a continuance. And I, I, my reading of the, of the record was, was essentially yours. I'm not sure where he asked for the continuance. Did he ask for a continuance? There's a possibility to infer that he might have sort of wanted a continuance, but he certainly did not ask for a continuance, Your Honor. Nowhere in the record does he ask directly for a continuance. Could not the government have requested a continuance on the record indicating to the judge that the government wasn't ready to proceed because you had not made the disclosure in accordance with the local rules and you wanted time to do that? Certainly, Your Honor. They, they could have done that. And that would have been a better way of handling this situation. Mr. Coffman indicated that he wasn't opposing. Everybody just wanted to push this forward because it's a very short, straightforward case. The Petitioner lied and she admitted she lied. And she has, and so to the extent there's an issue here, the issue is fairness. Was this a fair way to handle these proceedings? And, and I offer that of course it was a fair way to handle these proceedings because to the extent that there truly was something that could have been offered, then he could have asked for a continuance to say I really need to look at this because I might have something to, to fight this evidence with. Beyond that, under Colmenar, this Court requires not only that it be fundamentally unfair, but there be prejudice. There is no prejudice here and there's been no prejudice shown. We don't really know that, do we? What's that? We don't actually know. I mean, it's hard to figure out what she would say in verbatim, but she says maybe she has something. I don't know what it is. Your Honor, if there was something, then, then, then, then, then opposing counsel should have provided that to the Board by way of a proffer. If we had given more time, we could have, this is what we put, would have put. My concern is that the prejudice, the way I'm looking at it, is totally irrelevant because the government still has to make out its case. But, Your Honor, the evidence in the record demonstrates that Petitioner lied and that she lied, and so her asylum status should be terminated. But it wasn't admitted on the merits. So what do you do with that? Your Honor. Because of the, of the, of the procedural mistake. There was a procedural mistake, Your Honor, but, but that's all it was, was a procedural mistake. So this Court should ask the question, were these proceedings unfair? So what about due process? So if you admit that there was a procedural mistake? Your Honor, the question to ask is, first, with that mistake, did that make the proceedings fundamentally unfair? That's the standard under Colmenar, and there's nothing fundamentally unfair about these proceedings. Petitioner knew what she had said. Look, you're saying maybe the I.J. could have overridden the rule and admitted the documents on the merits, but he didn't do that, did he? That's correct, Your Honor. The immigration judge did not. Right. So the ruling was that because you didn't abide by the notice, this is only coming in as impeachment, right? That's what the immigration judge said. Right. Can we override that? Can we say that he should have, he was required to allow it in on the merits? Can you? You're asking us to override that and to say that we should look at that evidence as the sufficient evidence on the merits. But it wasn't put in for that. It wasn't allowed in on that basis. Your Honor, it made it to the record. And the question here is, is there record evidence to compel reversal? And there's no record evidence that wouldn't allow it. So you're saying, yes, we should consider it as if it were all admitted on the merits even though it wasn't? It is part of the record, Your Honor. That's contrary to everything we know from Ventura. If the agency decides it on one basis, we don't get to decide the case on an alternative basis. We do that with district courts. We don't do that with I.J.s or BIA decisions. So if the I.J. has only admitted it for one purpose, we don't get to say, well, we decided to admit it for a different purpose and agree with you. So either we do it on the basis on which the agency decided it, or under Ventura we have to remand it. I think those are only two choices, right? Your Honor, it's be asking us to do something different, which is to decide it for the agency on a different ground. Your Honor, I don't understand the relevance of the exact purpose by which, for which the evidence was admitted. When it was admitted, it became part of the record. It certainly went into the strategic decision whether to take the continuance or not, which it was a perfectly sensible thing to do not to take the continuance at that point, because there was, by his lights, nothing in the record that would have supported the conclusion. If, on the other hand, the I.J. had said this is coming in on the merits because I'm going to override the rule, then he might have made a different decision. Your Honor, there was never – I'm not quite sure I understand your question. There was never a request for a continuance, so. No, but he was offered a continuance with regard to the documents. And he said, I'm not taking it. And we asked him, why didn't you take it? He said because they, at that point, they hadn't made out their case. If the I.J., on the other hand, had let the documents in on the merits as opposed to as impeachment evidence, he might have made a different decision on that, on that – as to that issue. He might have, Your Honor. And to the extent that that's relevant now, he could have offered evidence to the Board of why it should have been handled differently. He could have said to the – he could have said to the Board, if I was – if I saw the record differently, then I would have asked for a continuance. But he didn't need to say that because it wasn't different. It was what he said it was. It was, in fact, admitted on – for impeachment. He was – it was right about that. Why should he go around saying, well, if the I.J. had done something else, I would have done something else. He didn't do something else, the I.J. But, Your Honor, even though this evidence was submitted for impeachment purposes, it became part of the evidence on the record. And the Board reviews the evidence on the record for clear error. The Board found no error in the immigration judge's conclusion that asylum should be terminated here. That was the Board's basis for lying. Was there some other proceeding that the government could have taken to terminate her asylum before it got to the I.J.? I thought there was some discussion here that there was something that would have shifted the burden and then forced her to come back with the proof that she wasn't – that she was indeed entitled to asylum. Your Honor, at the time, it could have been done before an asylum officer. Now, under this Court's Najjar precedent, it wouldn't have been able to have been done before an asylum officer. It has come before the I.J. But that was sort of part of the devil's bargain once they got before the I.J. with the lack of notice and all of that, as the government said, we're going to assume the burden here. Right? That's correct, Your Honor. Okay. And at the time, it could have been done before an asylum officer. And it would have been – they would have definitely obtained the correct result if that had been done before the asylum officer. Asylum officer, and then she would have had an opportunity to go before an I.J., right, to contest that? With the burden the other way at that point. But it would have been her burden. It would have been her burden at that point. That's correct, Your Honor. Rather than the government. So I think that was the devil's bargain here that the government caught when it went before the I.J. was to say we could have done it differently and forced her to come in here with the burden on her. Since we didn't do it that way, we've sort of messed up. We're willing to assume the burden here, and here's the way we're going to assume it. We're going to call her to the stand. We think this is all going to be over in five minutes because we think she's going to testify honestly. Your Honor, the government made that decision. They made an error in the procedure is really all that happened here. And so I think that ‑‑ Okay. And the next time one of you comes in and tells us about the response errors and the procedures, we should be as forgiving. Your Honor, I think that the immigration judges are regularly forgiving of the aliens who come in, aliens counsel who don't follow procedure completely. Sometimes they are. The immigration judge is given a great deal of discretion, and only the extreme cases make it to this Court. Every day immigration judges are cutting slack to opposing counsel and to immigrants when they grant the requests that are being made. And, again, you only see the extreme versions. And this is a case where you should ask yourself, is this fundamentally unfair, and was this Petitioner prejudiced? And here they were not prejudiced. There's no prejudice. The alien lied, and she admitted she lied. And I'd ask this Court to deny the Petitioner for review. Okay. Thank you very much. We will give you one minute to move on. Well, regarding the issue of the continuance, I think that the administrative record of pages 117 through 120 show that I did ask the immigration judge. I didn't expressly say to the immigration judge that we wanted a continuance, but it was clear that that's what that discussion was about. The immigration judge specifically noted that what I was asking for was to be able to examine the evidence and receive notice about the fact that they wanted to examine Mrs. Eruge as a hostile witness. In addition to the procedure, I don't see – I see the objection, but I don't see that you anyplace have used the word continuance or said anything about that. No, I didn't use the word continuance, but the immigration judge at – on page 119 lines 10 through 18 is where he said, Mr. Kaufman, was that you objected to the government request to call your client, the female client, first to testify as a hostile witness. Am I correct that you objected to that? You requested that the government produce evidence and list of witnesses. Am I correct? That he was – what was being communicated there was that I was asking to have these materials and this information and have an opportunity. And the ruling was that the requirement of providing witnesses did not apply to respondents. That is, it does not apply to an applicant. The witnesses refer to anybody other than an applicant. Relying on the rules that apply in a removal proceeding when the alien is applying for an immigration benefit and has the burden of proof, that was what the difference was here. And where the government argues that somehow I prevented the case from being continued at the end of the hearing, that – or that the lawyer for Homeland Security called and asked me to stipulate to continuing the case when they hadn't prepared. I'm not the immigration judge. I'm not the one that controls the calendar. They could have made whatever motion they wanted. They could have gone to that immigration judge before the hearing and said, we – for whatever reason, we don't have time. They didn't ask for the evidence to come in because – for good cause, because of their disorganization was a reason that they weren't prepared and asked the immigration judge to give them more time. They went ahead. They asked for the impeachment exception. Okay. Thank you very much. Thank you both for your argument in this interesting case. The case of Oruj v. Holder is submitted.
judges: Marshall, Berzon, Bybee